WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maisha Lamptey, et al., | No. CV-13-02156-PHX-NVW |
| Plaintiffs, | **ORDER** |
| v. | |
| Corrections Corporation of America, | |
| Defendant. | |

Before the Court are Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 15), Plaintiffs' Response (Doc. 18), Defendant's Reply (Doc. 19), and Plaintiffs' Supplemental Allegations (Doc. 22). Defendant seeks dismissal of Counts I, II, and IV. For the following reasons, Defendant's motion will be denied.

**I.  LEGAL STANDARD**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But the principle that a court accepts as true

all the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II.   BACKGROUND

The Court thus assumes the truth of the following allegations. Plaintiffs Maisha Lamptey and Belinda Rodriguez worked for Defendant Corrections Corporation of America (CCA) at its Eloy facility. Doc. 11 ¶ 7. Lamptey served as a correctional officer; Rodriguez served as a correctional counselor. Both were required to supervise inmates. Doc. 18 at 2.

Rodriguez alleges that CCA supervisors Lopez and Trejo sexually harassed her beginning November 2011. She reported the conduct in March 2012. Doc. 11 ¶¶ 8, 12. This conduct forms the basis of Plaintiffs' Count III, sexual harassment against Rodriguez in violation of Title VII, which CCA does not seek to dismiss.

In early 2012, Plaintiffs allege CCA employees posted a magazine cutout of a gorilla in Trejo's office, made racial jokes about the picture, and compared the picture to Lamptey, who identifies as African American. Rodriguez told Lamptey only that the picture was in the office, and Lamptey saw the picture herself. *Id.* ¶ 9.

Rodriguez subsequently apprised a unit manager of the picture and told Lamptey about the racial jokes and comparisons. At some point between April 9 and April 16, 2012, Lamptey also discussed the picture and comments with the unit manager. Doc. 18 at 3 & n.2. Rodriguez also reported the picture to human resources, and both Rodriguez and Lamptey participated in an internal investigation in mid-April, at which point CCA put Lopez and Trejo on administrative leave. Doc. 11 ¶ 10; Doc. 22 at 2. After a one-month investigation, CCA fired them. Doc. 11 ¶ 12; Doc. 22 at 2. This allegedly angered many of Plaintiffs' coworkers who were friendly with Lopez and Trejo. Doc. 11 ¶ 12.

1   During the month-long investigation, and for two months after CCA fired Lopez
2   and Trejo, coworkers Susan Murray, Vanessa Romero, Angela Rodriguez, and Rebecca
3   Rodriguez twice each week made racially charged comments in Lamptey's presence,
4   including "it smells like bananas" and "my face is so hairy today." Doc. 11 ¶ 13; Doc. 22
5   at 2. Despite Lamptey's repeated reports to human resources, CCA neither disciplined her
6   coworkers nor provided any relevant training. Doc. 22 at 2–3. Because of these
7   comments, Lamptey attempted to avoid her coworkers and experienced humiliation and
8   stress. Consequently, she called in sick three times in May and June. Doc. 11 ¶ 12; Doc.
9   22 at 2. Similarly, in August 2012 Lamptey's physician recommended she avoid work for
10  nine days because she experienced stress and increased blood pressure there. Doc. 11 ¶ 13.
11  This conduct forms the basis of Plaintiffs' Counts I and II, racial discrimination against
12  Lamptey in violation of Title VII and 42 U.S.C. § 1981.

13  Finally, Plaintiffs allege CCA violated Title VII by retaliating against both of them
14  for protesting the harassment. This forms the basis of Count IV. Rodriguez alleges that the
15  terms of her employment changed. Before she complained, Rodriguez had obtained a
16  favorable schedule to attend school and had only been "posted up" to cover absentee
17  coworkers' shifts once or twice each week. Doc. 22 at 3–4. After she complained, CCA
18  scheduled her less favorably, which prevented her from attending school, posted her up
19  four or five days each week, twice posted her up in unsafe and previously unassigned
20  positions, and withdrew her ability to move certain prisoners to ensure safety. Doc. 22 at
21  4–5; Doc. 11 ¶ 16. CCA investigated Rodriguez's retaliation charges and found them
22  unproven. Doc. 11 ¶ 16. In August 2012, Rodriguez sought medical and psychological
23  attention "due to the sexual harassment and resulting hostile work environment." *Id.* ¶ 17.
24  In September 2012, CCA's warden told Rodriguez, "People who retaliated will not be
25  fired. I'm sure those things happened but how do you prove that?" Doc. 22 at 5.
26  Rodriguez accepted long-term disability and left work in December 2013. Doc. 11 ¶ 19.

27  Lamptey alleges that after complaining and then participating in CCA's
28  investigation, CCA stopped assigning her to lucrative overtime duties in May 2012—and

1  declined to provide her the required certification to obtain those duties—despite assigning
2  them to similarly situated employees who did not complain and despite informing her
3  before the investigation that she could become certified. *Id.* ¶¶ 14–15. Additionally, in
4  May and June 2012 Lamptey's supervisors began criticizing her work. Lamptey
5  complained to human resources about perceived retaliation three times in May 2012. Doc.
6  22 at 3. Finally, Lamptey asserts she received three disciplinary notices, two in December
7  2012 and one in May 2013. The third resulted in a suspension, at which time CCA's
8  warden told her she just could not let go of the gorilla picture. CCA then reassigned
9  Lamptey to another facility. Doc. 11 ¶ 18.

**III.  ANALYSIS**

   **A.  Race discrimination against Lamptey**

Plaintiffs assert Lamptey was subject to a sufficiently hostile environment to constitute race discrimination. "Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation marks omitted). A hostile work environment may violate Title VII, *id.* at 21, and it is also actionable under 42 U.S.C. § 1981. *Manatt v. Bank of America, N.A.*, 339 F.3d 792 (9th Cir. 2003).

To establish an actionably hostile workplace, Lamptey must allege she was subject to unwelcome verbal or physical racial conduct and that "the conduct was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998) (per curium). An environment must be both subjectively and objectively hostile. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995); *Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 871–72 (9th Cir. 2011).

1      CCA argues the environment was not so objectively abusive that it constituted an
2 actionably hostile work environment. Doc. 15 at 5–7; Doc. 19 at 4–5. Whether an
3 "environment is hostile or abusive can be determined only by looking at all the
4 circumstances. These may include the frequency of the discriminatory conduct; its
5 severity; whether it is physically threatening or humiliating, or a mere offensive utterance;
6 and whether it unreasonably interferes with an employee's work performance." *Harris*,
7 510 U.S. at 23; *see also Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).
8 The totality of the circumstances must be assessed "from the perspective of a reasonable
9 person belonging to the racial or ethnic group of the plaintiff." *McGinest v. GTE Serv.*
10 *Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004); *id.* at 1116 ("Racially motivated comments or
11 actions may appear innocent or only mildly offensive to one who is not a member of the
12 targeted group, but in reality be intolerably abusive or threatening when understood from
13 the perspective of a plaintiff who is a member of the targeted group.").

14      Construing the First Amended Complaint in Plaintiffs' favor, the Court cannot
15 accept CCA's conclusion that "[a] reasonable person in Lamptey's position would not
16 consider the environment hostile." Doc. 15 at 6. Lamptey has alleged that CCA
17 employees made racially charged comments in her presence for several months after a
18 supervisor was fired in part for displaying a gorilla picture in his office. She included
19 specific examples, which allude to racist tropes and which an African American quite
20 reasonably could perceive as sufficiently abusive to render the environment hostile. *See,*
21 *e.g.*, *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) ("To suggest that a
22 human being's physical appearance is essentially a caricature of a jungle beast goes far
23 beyond the merely unflattering; it is degrading and humiliating in the extreme."); *Ray v.*
24 *Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) ("Repeated derogatory or humiliating
25 statements . . . can constitute a hostile work environment.").

26      This remains so even though the coworkers' did not direct their comments at
27 Lamptey. *McGinest*, 360 F.3d at 1117 ("[I]f racial hostility pervades a workplace, a
28 plaintiff may establish a violation of Title VII, even if such hostility was not directly

targeted at the plaintiff."); *id.* at 1118 ("If racial animus motivates a harasser to make provocative comments in the presence of an individual in order to anger and harass him, such comments are highly relevant in evaluating the creation of a hostile work environment, regardless of the identity of the person to whom the comments were superficially directed."). It is also not dispositive that Lamptey's coworkers used language that, in other contexts, would not have carried the racist overtones she reasonably perceived. *Id.* at 1116–17 ("[T]he use of 'code words' can, under circumstances such as we encounter here, violate Title VII.").

Although Lamptey has offered only two examples of her coworkers' statements, her allegations that these statements were made twice each week for several months distinguish this situation from the balance of cases to which CCA cites affirming defense judgments for largely isolated, sporadic, or undescribed incidents. *See, e.g.*, *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003) (affirming summary judgment on hostile work environment claim where only two of the alleged incidents involved "racially related epithets"); *Manatt*, 339 F.3d at 796, 798–99 (affirming summary judgment on hostile work environment claim where defendants engaged in "simple teasing," where two troubling and "regrettable incidents" occurred over two-and-a-half-year period, and where the "jokes" ceased after a responsive staff meeting); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (affirming summary judgment on hostile work environment claim where "offensive conduct was concentrated on one occasion"); *Gregory*, 153 F.3d at 1074–75 (affirming summary judgment on hostile work environment claim involving a single drawing of a monkey, which accompanied a memo admonishing employees "not to 'get the monkey off their back' by passing their responsibilities to others"); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1036–37 (9th Cir. 1990) (summarily affirming a directed verdict to defendants on hostile work environment claim without describing or analyzing the offensive conduct).

Lamptey alleges specific, twice-weekly racial harassment over a period of "several months," which caused her to experience "humiliation," to avoid coworkers, and to miss

- 6 -

work. This is sufficient to state a plausible claim for race discrimination under Title VII and § 1981 on a hostile work environment theory.

To recover from CCA, Lamptey must ultimately demonstrate that her employer is liable for the actions of its employees. *McGinest*, 360 F.3d at 1119 ("[A] court must first assess whether a hostile work environment existed, and then determine whether the response was adequate as a whole."). Here, Plaintiffs allege that CCA failed to take corrective action despite Lamptey's continued complaints to her human resources contact. This probably suffices to state a claim for employer liability. *Nichols*, 256 F.3d at 875 ("Once an employer knows or should know of co-worker harassment, a remedial obligation kicks in. An employer is liable for the hostile work environment created by a co-worker unless the employer . . . takes adequate remedial measures in order to avoid liability.") (citation and quotation marks omitted). Because CCA does not challenge employer liability, however, and instead attacks Lamptey's allegations of a hostile work environment, the Court does not reach the issue on this motion.

### B. Retaliation against Lamptey and Rodriguez

Lamptey and Rodriguez both allege that CCA retaliated against them in violation of Title VII. To state a claim for retaliation, they must show (1) they engaged in protected activity, (2) they suffered adverse employment action, and (3) the protected activity and adverse action share a causal link. *Ray*, 217 F.3d at 1240.

#### 1. Protected activity

CCA concedes for purposes of its motion that Rodriguez engaged in protected activity. It disputes that Lamptey did. The First Amended Complaint, response, and supplemental allegations, however, reflect that Lamptey engaged in protected activity beginning in early April when she discussed the gorilla picture and racist jokes with her unit manager, when CCA's human resources department twice interviewed her as part of

its internal investigation, and when she complained to human resources about the continued conduct after CCA fired Lopez and Trejo.  Doc. 11 ¶ 10; Doc. 18 at 3 n.2.

CCA makes much of whether Lamptey asserts activity protected by the opposition clause of Title VII's antiretaliation provision or by its participation clause.

> The Title VII antiretaliation provision has two clauses, making it "an unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).  The one is known as the "opposition clause," the other as the "participation clause."

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 274 (2009). On CCA's view, Lamptey has not alleged that the opposition clause protects her conduct, and she cannot allege that the participation clause protects it.

Lamptey's statements pursuant to an internal investigation—rather than an EEOC investigation—may be unprotected by the participation clause.  *See Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990).  Lamptey's conduct comes within the opposition clause, however, which the Supreme Court has interpreted broadly.  *Crawford*, 555 U.S. at 276–77 (rejecting the Sixth Circuit's restrictive definition of "opposing" and extending the opposition clause to an employee who did not instigate but nonetheless responded to an internal investigation); *see also Ray*, 217 F.3d at 1240 n.3 ("Making an informal complaint to a supervisor is also a protected activity.").  At this early stage, it is sufficient that Lamptey complained about the offensive conduct and was interviewed in response to her complaints; she need not have used the word "opposition" to bring her activity within Title VII's antiretaliation provision.

### 2.     Adverse employment action

Title VII protects employees "from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  The challenged action must be "materially adverse, which in this context means it well might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks omitted); *see also Ray*, 217 F.3d at 1237. "[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Brooks*, 229 F.3d at 928 (citing *Ray*, 217 F.3d at 1243). "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Id.* Similarly, the transfer of job duties, *see Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987), lateral transfers, *Ray*, 217 F.3d at 1241, and the initiation of administrative inquiries may suffice. *See Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007). On the other hand, "declining to hold a job open for an employee and badmouthing an employee outside the job reference context do not constitute adverse employment actions." *Brooks*, 229 F.3d at 928–29. Similarly, "mere ostracism by co-workers" is insufficient. *Ray*, 217 F.3d at 1241.

Both Plaintiffs have adequately alleged materially adverse employment action. After Rodriguez complained, CCA posted her up more often and to dangerous and previously unassigned situations, reassigned her favorable schedule, and withdraw one of her job responsibilities. Rodriguez also alleges that CCA's warden conceded that retaliation occurred but doubted she could prove it. This rises above badmouthing and ostracism. After Lamptey complained, she experienced increased criticism, and CCA declined to weapons-certify her, transferred away her hospital duty, issued disciplinary notices, and ultimately reassigned her to another facility. Although the informal criticism likely does not constitute materially adverse employment action, the rest does. *Brooks*, 229 F.3d at 928; *Yartzoff*, 809 F.2d at 1376.

### 3. Causal connection

Finally, Plaintiffs must allege that CCA took the adverse employment action because they engaged in the protected activity and that "but for such activity" they would

not have been subject to the challenged decisions. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064–65 (9th Cir. 2002). "At the prima facie stage of a retaliation case, the causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Poland*, 494 F.3d at 1180 n.2 (quotation marks omitted). "The causal link between a protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two." *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (quotation marks omitted).

Rodriguez suffered the adverse employment action beginning early May 2012, less than two months after she complained about the sexual harassment and racist comments and corresponding with CCA's investigation of Lopez and Trejo. This is close enough to infer a causal link. *Yartzoff*, 809 F.2d at 1376 (finding causal link where just less than three months lapsed between protected activity and adverse employment action).

Lamptey also sufficiently alleges that she lost hospital duty in close proximity to complaining. At the end of 2011, CCA decided that employees assigned to hospital duty required weapons certification, which Lamptey did not possess. Still, Lamptey continued to receive hospital duty through the beginning of April 2012. CCA also informed her that she would receive the necessary weapons certification. After she complained, Lamptey no longer received hospital duty, and CCA did not certify her. She alleges, however, that two other CCA employees who did not complain and who were uncertified continued to receive hospital duty in April and May 2012. These allegations are subject to competing inferences—that CCA retaliated against Lamptey as she says, or that CCA was slow and uneven in implementing a preannounced policy requiring weapons certification and that it decided against certifying Lamptey for nondiscriminatory reasons despite earlier representations. That is enough at this stage. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when

defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible.").

Because Lamptey has sufficiently alleged a causal connection between her protected activities and losing hospital duty, the Court need not (and does not) determine whether she has also sufficiently alleged a causal connection between those activities and receipt of disciplinary notices and a subsequent transfer. It is worth noting for the parties' benefit, however, that these latter employment actions did not follow in close proximity to her protected activity and that, aside from the warden's May 2013 comment that Lamptey could not let go of the picture, there are no factual allegations suggesting that the protected activity was their but-for cause.

IT IS THEREFORE ORDERED denying Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 15).

Dated this 12th day of June, 2014.

_____
Neil V. Wake
United States District Judge